NETTIE BROCKWAY v. DAVID PETTED AND JOHN HARMON, IMPLEADED WITH ROBERT PATTERSON.

[See 72 Mich. 122.]

*Liquor traffic—Bond of dealer—Filing with treasurer—Liability of sureties.*

1. The liability of sureties upon a liquor-dealer's bond, executed under How. Stat. § 2278, attaches upon its acceptance and approval by the township or other approving board. *People v. Laning*, 73 Mich. 284.

    So *held*, where the date of approval was May 12, and the bond was not filed with the county treasurer until May 27, and the act of the principal for which damages were recovered accrued in the *interim* and in a suit upon the bond to recover said judgment it was contended that the bond was inoperative until such filing.

2. The following propositions are summarized from the opinion of Mr. Justice GRANT:

*a*—Upon filing an antedated liquor-dealer's bond with the county treasurer it relates back to its date, and covers the time prior to such filing.

*b*—No discretion in regard to the receipt and filing of a liquor-dealer's bond is lodged in the county treasurer, who is bound to receive and file it, when presented with the approval of the town board indorsed thereon.

*c*—The word "delivered," as used in How. Stat. § 2278, was not intended to be used in the legal sense of a delivery necessary to the execution of a contract. The duty of the county treasurer is merely clerical, and not intended as an act to give effect to the bond, but to make and perpetuate a record of it.

*d*—The object of How. Stat. § 2278, was to secure the payment of damages adjudged in favor of any person for injuries inflicted upon him, either in person or property, or means of support, by reason of the liquor dealer's selling, furnishing, giving, or delivering liquors, and the right to recover such damages is not made dependent upon the fact that he is *legally* engaged in the business.

*e*—It is the established rule that sureties are estopped to deny the facts recited in their obligations, whether true or false.

Error to Kent. (Grove, J.) Argued January 9, 1890. Decided April 11, 1890.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*William F. McKnight* and *Turner & Carroll,* for appellants, contended as stated in the opinion, in which their authorities are reviewed.

*Myron H. Walker,* for plaintiff, contended for the doctrine stated in the opinion.

GRANT, J. Plaintiff sued defendant Robert Patterson for injury sustained by her in consequence of his having sold liquor to her husband. She obtained judgment, and thereupon brought this suit upon the liquor bond signed by defendant Patterson as principal and the other defendants as sureties. She recovered judgment in the court below.

The bond was dated May 5, 1886, and was the bond required by How. Stat. § 2278. The bond was accepted and approved by the town board May 12, 1886, and their approval indorsed thereon May 15. It was filed with the county treasurer May 27. The act of Patterson for which plaintiff recovered her judgment occurred between the date of the approval of the bond and its filing with the county treasurer. Defendants insist that no liability could be incurred under this bond until it had been filed with or delivered to the county treasurer. This is the principal question in the case.

1. This is a statutory bond, and must be interpreted according to the intent and meaning of the legislative enactment. It runs to the people of the State of Michigan. Under the statutes, the sureties must sign and justify. It must be approved by the town board, and their approval indorsed. It must then be filed with, or delivered to, the county treasurer. No discretion in regard to the receipt and filing is lodged in the county treasurer. When presented, with the approval of the town board indorsed thereon, he is bound to receive it and file it. The filing is clearly for the benefit of the public, and those who may be entitled to remedies under it. The word "delivered," used in this statute, was clearly not intended to be used in the legal sense of a delivery necessary to the execution of a contract. The fact that, in the statute, the word "filed" is used interchangeably with "delivered," appears to me conclusive on this point. The duty of the treasurer is merely clerical; not intended as an act to give effect to the bond, but to make and perpetuate a record of it. "Delivery," in the sense that it is necessary to the complete execution of a contract, implies a discretion both as to tender and acceptance. A deed may be properly signed, witnessed, and acknowledged, but it is not executed until delivery. The grantor

may or may not deliver it as he chooses. When the statute provides that a bond shall be deposited, filed with, or delivered to, some public officer, to whom it gives no discretion in the matter, it makes his duty purely clerical. We must, therefore, look to the statute for some other time fixed by it when this bond can be regarded as executed, and given legal effect. That time, in my judgment, is fixed upon the approval of the bond. This Court has said that such a bond is valid when accepted and approved by the common council. *People v. Laning,* 73 Mich. 284.

The defense is based upon the theory that there can be no liability as against the sureties until the principal had complied with all the provisions of the law prerequisite to his commencing the business. If defendant Patterson had filed his bond the day after its approval, but failed to pay the tax, the defendants might with equal propriety claim this as a defense, and say, as they now say, that they had a right to believe that their principal would comply with the law before entering upon the business. If Patterson had left this bond with the town board, to be filed by them with the treasurer, and the board had failed to do so, would this defense then be urged? What difference can it make whether Patterson gave the bond to some one else to file with the treasurer, or took it himself for that purpose? He was then carrying on the business. His bond said so. He intended to file it, and did file it afterwards.

The case of *Hyatt v. Sewing Machine Co.,* 41 Mich. 225 (1 N. W. Rep. 1037), decides, simply, that a surety is not presumed to have meant to become answerable for acts committed before he signed the obligation. The language of the bond is not given, but the Court say "the terms are all future." The principle is recognized in *Bruce v. State,* 11 Gill & J. 382. That was a suit

upon a sheriff's bond. The constitution of Maryland pro-
vided that no sheriff should be qualified to act until he
had given the bond, and the statute provided before
whom, and when, such bond should be taken. The court
say:

"The bond is made, it is the obligatory act of the
signers, when, being signed, it is presented to the court
or judge, etc., and the sureties are adjudged sufficient.
*   *   *   From that moment it is the operative
act and deed of the parties, and not before."

The case of *McMicken v. Webb*, 6 How. 293, involved
the liability of the signers to a promissory note. So is
also the case of *Burson v. Huntington*, 21 Mich. 430, and
*Bullock v. Taylor*, 39 Id. 137. They have no application
to the case at bar. In *Com. v. Kendig*, 2 Penn. St. 448,
the suit was upon the bond of a justice of the peace. It
was signed upon Sunday, and delivered on Monday to the
prothonotary. The court says:

"Granting that the bond was signed and delivered on
Sunday, yet I am by no means satisfied that it is void as
against those who are injured by the official misconduct
of the justice. They are innocent parties, and ought not
to be affected by the folly or turpitude of the prothonotary
and obligors. Such a construction of the act would
enable the obligors to take advantage of their own wrong
as against persons who cannot by any possibility protect
themselves."

Does not the same reasoning apply very forcibly to this
case? The above are all the authorities cited by the
defendants in support of their contention. One of them
directly sustains the rule contended for by plaintiff, and
none of the others are in conflict with it.

The case of *State v. Toomer*, 7 Rich. Law, 216, was a
suit upon a bond of a master in equity. The statute
prescribed several prerequisites to entitle the master to
enter upon his duties, one being that he should not enter

upon them until he had recorded in the clerk's office a certificate from the commissioners that he had lodged in the treasury his bond, and that if he failed to comply with these requisites the office was declared vacant. This was held to be no defense to an action against the sureties. His official acts as to third persons were held valid, and for official defaults his sureties were liable.

A bond is clearly complete, and becomes operative, when all the discretionary acts necessary to give it validity have been performed. When these have been performed, and the principal commences the business mentioned in the bond, and for the proper performance of which the sureties have become obligated, the bond is then in full force, and the liability of the sureties attaches. In this case the bond was executed, the principal was carrying on the business, and it is fair to presume that his sureties knew it. I find no principle, moral or legal, upon which they can be relieved. If defendants' contention be correct, then, if Patterson had paid the tax, and the treasurer had issued to him the receipt without the filing of the bond, the sureties would be relieved from liability. To all such claims it is a sufficient answer that it is against the unlawful acts of Patterson that these bondsmen expressly obligated themselves. The object of the statute was to secure the payment of damages—

"That may be adjudged to any person for injuries inflicted upon them, either in person or property, or means of support, by reason of his [the liquor dealer's] selling, furnishing, giving, or delivering any such liquors."

The right to recover such damages is not made dependent upon the fact that the liquor dealer is legally engaged in the business. As well might it be claimed that the bondsmen have the right to presume that liquor dealers will not sell on the Fourth of July, or any other

day upon which the sale is prohibited, and therefore that they are not liable when injury results.

2. Upon the filing of the bond, it related back to its date, and covered the time prior to its filing. The rule is well settled that contracts of suretyship affecting ordinary business transactions take effect only from the date of their execution, which includes delivery, and that they will not be given retroactive effect unless so expressly provided. But it by no means follows that this rule extends to statutory bonds, given for the protection of third parties, covering a period of time fixed by the statute. The statute requires that every liquor dealer shall yearly execute such bond. It continues in force for one year from the 1st of May. It was the evident intent of these parties to comply with this provision. They signed the bond on the 12th of May, and deliberately dated it back to the 5th of May. It recited that Patterson then professed to carry on the business. They are presumed to know the law, and to have contracted with reference to it. They deliberately made their bond to speak from the 5th. As a matter of fact he was carrying on the business. The only fair conclusion to be drawn is that they intended the bond to relate back to and cover the period from its date.

In *State v. Finn*, 23 Mo. App. 290, the sheriff was elected in November. On November 21 he gave the bond required by the statute. November 29 the court, for some reason which does not appear, ordered a new bond to be given in lieu of the first. Suit was brought for money received by the sheriff between the 21st and the 29th. The sureties were held responsible for the sheriff's conduct during his entire official term. In *Ætna Ins. Co. v. American Surety Co.*, 34 Fed. Rep. 291, the bond sued upon was dated June 15, and was to run for the term of 12 months ending June 15, the following year.

It was not delivered or accepted until July 29. The court held that the liability of the surety accrued by relation as of its date, and that the sureties were liable for all defalcations prior to July 29. In that case the parties in the bond fixed the term. In this case the statute fixes it.

3. It is the established rule that sureties are estopped to deny the facts recited in their obligations, whether true or false. Brandt, Sur. §§ 29, 30. Where the bond recited that H. was appointed paymaster, it was held that he and his sureties were estopped to deny that fact. *U. S. v. Bradley*, 10 Pet. 365. Where the bond recited that H. was appointed a wharfinger, it was held that his sureties were estopped to deny it. *People v. Huson*, 20 Pac. Rep. 369. It is also held immaterial whether there be any such office as is set up in the bond. *Rogers v. U. S.*, 32 Fed. Rep. 890. Where a replevin bond recited that it was signed by S., the principal, who was in fact dead at the time, the sureties were held estopped to deny that S. had signed it. *Collins v. Mitchell*, 5 Fla. 364.

Neither Patterson nor his sureties can take advantage of his neglect to file the bond. His failure to do so was his own wrongful act. *Stevens v. Treasurers*, 2 McCord, 107. In that case the sheriff could not, by law, enter on the duties of his office until he had filed a certificate from commissioners that he had executed and filed a bond with the treasurer. The court says:

"Neither he nor the sureties can take advantage of his wrongful neglect. * * * The approval by the commissioners, the certificate, * * * are no more than the mere modes of giving, examining, and perpetuating the bond. These are not of the essence, and constitute no part of the obligation, of the contract."

In the case at bar the defendant's sureties had done all that the law required, and all that they could do, to

complete the bond. They had signed and justified to it. It had been approved. They left it with their principal, Patterson, to file. It recited that he was then professing to carry on the business. They are, therefore, estopped, both by law and reason, to make this defence. It is notorious that liquor dealers, by the implied, if not the express, assent of the officers charged by the law with the duty of enforcing it, are often permitted to carry on the business until they can raise the money to pay the tax. It would, in my judgment, be a direct violation of the spirit and intent of this law to relieve them and their sureties from liability upon their bonds under such circumstances. To hold them liable gives the protection which the law intended to innocent parties, who are not, and cannot well be, charged with any duty in regard to the execution or filing of the bond. To relieve them would result in opening the door to intentional as well as careless evasions of the law.

4. The court correctly rejected the offer of defendants to show that after they heard of the injury to plaintiff's husband they demanded the surrender of the bonds, and that Patterson promised to surrender them.

Judgment affirmed, with costs.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred.