# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## BECK v PARK WEST GALLERIES, INC

Docket No. 151687. Decided March 24, 2016.

Brian Beck, Audrey Mahoney, David and Felice Oppenheim, Patty Brown, and others brought an action in the Oakland Circuit Court against Park West Galleries, Inc., and others, alleging, *inter alia*, breach of contract and fraud. Plaintiffs had purchased art from defendants on separate occasions over a period of years. Each sale was accompanied by an invoice under which the parties agreed to the terms of the transaction. By 2007 the invoices included a standard arbitration clause, but earlier invoices did not include the arbitration agreement. Plaintiffs brought suit claiming that the art they had purchased from Park West was not worth what Park West had represented as its value. The court, Nanci J. Grant, J., granted summary disposition in favor of defendants, determining that the arbitration clause was enforceable and required arbitration of all disputes arising from transactions with invoices containing the arbitration clause. The court further determined that the remaining claims brought by the Oppenheims, which concerned purchases made in 2003 and 2004, were barred by the statute of limitations. Mahoney, Brown, and the Oppenheims appealed. Defendants cross-appealed, disputing the circuit court's ruling that not all the Oppenheims' claims were subject to arbitration. In an unpublished opinion, the Court of Appeals reversed in part, holding that the arbitration clause in invoices for the later transactions extended to earlier transactions for which the invoices did not contain an arbitration clause. Mahoney, Brown, and the Oppenheims sought leave to appeal.

In a unanimous opinion per curiam signed by Chief Justice Young and Justices Markman, Zahra, McCormack, Viviano, Bernstein, and Larsen, the Supreme Court, in lieu of granting leave to appeal and without hearing oral argument, *held*:

Arbitration is a matter of contract, and a party cannot be required to arbitrate an issue that he or she did not agree to submit to arbitration. In this case, plaintiffs' purchases were of unique pieces of art purchased on different cruise ships in various international waters in different years. Each unique transaction, accompanied by a separate invoice, constituted a separate and distinct contract, capable of independent enforcement. Michigan law requires that separate contracts be treated separately. The invoices pertaining to the Oppenheims' 2003 and 2004 purchases did not require any dispute arising from those purchases to be arbitrated. The arbitration clause contained in later invoices could not be applied to disputes arising from the 2003 and 2004 purchases. The only claims subject to arbitration were those arising from invoice agreements

containing an arbitration clause. A general policy favoring arbitration cannot trump the actual intent and agreement of the parties. Each transaction at issue involved a separate and distinct contract, and the facts did not support a conclusion that the parties intended for the arbitration clause contained in the later invoices to apply retroactively to the earlier contracts.

That portion of the Court of Appeals judgment that extended the arbitration clause to the parties' separate, prior transactions reversed; case remanded to the Court of Appeals for consideration of the issues raised in plaintiffs' appeal that the Court did not previously address to the extent those issues related to claims not subject to arbitration. Leave denied in all other respects.

©2016 State of Michigan

OPINION

Chief Justice:    Justices:

Robert P. Young, Jr.    Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

FILED March 24, 2016

STATE OF MICHIGAN

SUPREME COURT

BRIAN BECK, GUY HANSON, KAREN
HANSON, RAYMOND FAVICHIA,
MARGARET FAVICHIA, JUDITH
SCHLEBECKER, JOHN SCHLEBECKER,
and BERNADETT STEINER,

         Plaintiffs,

and

AUDREY MAHONEY, DAVID
OPPENHEIM, FELICE OPPENHEIM, and
PATTY BROWN,

         Plaintiffs-Appellants,

v                                No. 151687

PARK WEST GALLERIES, INC., ALBERT
SCAGLIONE, MORRIS SHAPIRO,
ALBERT MOLINA, and PLYMOUTH
AUCTIONEERING SERVICES, LTD.,

         Defendants-Appellees.

BEFORE THE ENTIRE BENCH

PER CURIAM.

This case requires the Court to consider whether an arbitration clause included in invoices for plaintiffs' artwork purchases applies to disputes arising from plaintiffs' previous artwork purchases when the invoices for the previous purchases did not refer to arbitration. We agree with plaintiffs that the arbitration clause contained in the later invoices cannot be applied to disputes arising from prior sales with invoices that did not contain the clause. Each transaction involved a separate and distinct contract, and the facts do not reasonably support a conclusion that the parties intended for the arbitration clause to retroactively apply to the previous contracts.

Accordingly, we reverse that part of the Court of Appeals judgment that extends the arbitration clause to the parties' prior transactions that did not refer to arbitration. We remand this case to the Court of Appeals for consideration of the issues raised in plaintiffs' appeal that the Court did not address to the extent those issues relate to claims that are not subject to arbitration. In all other respects, leave to appeal is denied because we are not persuaded that the remaining question presented should be reviewed by this Court.

## I. BASIC FACTS AND PROCEEDINGS

Defendant Park West Galleries, Inc. (Park West) sold art on various cruise ships traversing international waters. Plaintiffs[1] purchased art from Park West on multiple occasions over the course of several years while on different cruise ships in different locations.

---

[1] The action was originally filed by 12 plaintiffs, but most agreed to dismiss their claims, leaving only plaintiffs Audrey Mahoney, David Oppenheim, Felice Oppenheim, and Patty Brown.

2

With each sale, Park West provided plaintiffs with a certificate of authentication and a written appraisal, both of which were signed by agents of defendants.[2] All the purchases made by plaintiffs were also accompanied by a signed invoice under which the parties agreed to the terms of the transaction. By 2007, the invoices that Park West provided with plaintiffs' purchases contained an agreement to arbitrate all claims concerning the transaction, which provided in pertinent part:

> <u>ARBITRATION OF CLAIMS AND DISPUTES AND WAIVER OF JURY TRIAL.</u> Any disputes or claims of any kind, including but not limited to the display, promotion, auction, purchase, sale or delivery of art, items, or appraisals shall be brought solely in non-binding arbitration and not in any court or to any jury. . . . All decisions respecting the arbitrability of any dispute shall be decided by the arbitrator(s).

However, prior invoices provided with plaintiffs' purchases contained no such clause.[3]

According to plaintiffs, years after they made their purchases, they discovered that the art purchased from Park West was not actually worth the represented value and that some of the art was forged. Plaintiffs filed the instant suit against defendants on September 28, 2011, asserting claims of breach of contract, breach of warranty of fitness, fraud, negligent misrepresentation, conspiracy, conversion, negligence, intentional

---

[2] The owners of Park West, Albert Scaglione and Albert Molina; the gallery director, Morris Shapiro; and Plymouth Auctioneering Services, Ltd., are also defendants in this matter. All defendants are in the same position for purposes of this appeal.

[3] All the invoices for the 2007 and 2008 purchases made by Mahoney and Brown contained the arbitration clause, but only some of the invoices for the Oppenheims' purchases did. The Oppenheims purchased four pieces of art from defendants: one in 2003, one in 2004, one in 2008, and one in 2009. The invoices for the Oppenheims' purchases in 2003 and 2004 did not contain the arbitration clause, but the invoices for purchases made in 2008 and 2009 did.

infliction of emotional distress, violation of the sales of fine art act,[4] violation of the Art Multiple Sales Act,[5] and violation of the Michigan Consumer Protection Act.[6]

On June 1, 2012, the trial court granted defendants' first motion for summary disposition under MCR 2.116(C)(7) with respect to claims arising out of transactions with invoices that contained the arbitration clause. The trial court determined that the clause was enforceable and required arbitration of all disputes arising from the purchases described in those particular invoices. The trial court thus dismissed all claims brought by plaintiffs Audrey Mahoney and Patty Brown and some of the claims brought by plaintiffs David and Felice Oppenheim. The trial court declined to dismiss any of the claims brought by the Oppenheims that involved purchases in which the invoices did not contain an arbitration clause, concluding that the arbitration clause in the later invoices did not extend to transactions with invoices that did not contain the clause.

Defendants filed a second motion for summary disposition under MCR 2.116(C)(7), alleging that the rest of the Oppenheims' claims were barred by the statute of limitations. The trial court agreed in a September 6, 2013 order and opinion and dismissed the Oppenheims' remaining claims.

Mahoney, Brown, and the Oppenheims appealed in the Court of Appeals. Defendants cross-appealed, disputing the trial court's ruling that not all the Oppenheims' claims were subject to arbitration. The Court of Appeals reversed in part, holding that

---

[4] MCL 442.321 *et seq.*

[5] MCL 442.351 *et seq.*

[6] MCL 445.901 *et seq.*

4

the arbitration clause in invoices for the later-executed transactions extended to prior transactions for which the invoices did not contain the clause.[7] Consequently, all the Oppenheims' claims were deemed subject to arbitration and dismissed. Mahoney, Brown, and the Oppenheims then filed an application for leave to appeal in this Court, arguing in relevant part that the Court of Appeals erred by concluding that all their claims are subject to arbitration.[8]

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(7).[9] Under MCR 2.116(C)(7), summary disposition is appropriate if a claim is barred because of "an agreement to arbitrate . . . ." Whether an issue is subject to arbitration is also reviewed de novo.[10]

---

[7] *Beck v Park West Galleries, Inc*, unpublished opinion per curiam of the Court of Appeals, issued March 3, 2015 (Docket No. 319463). The Court of Appeals majority adopted the reasoning of the dissent in a prior, virtually identical case involving different plaintiffs. *Id*. at 4-7, citing *Cohen v Park West Galleries, Inc*, unpublished opinion per curiam of the Court of Appeals, issued April 5, 2012 (Docket No. 302746) (MURRAY, J., dissenting in part).

[8] While the Oppenheims, Mahoney, and Brown also argued in their application to appeal in this Court that the arbitration clauses themselves are invalid, we are not persuaded that this question should be reviewed by this Court. Consequently, for purposes of this opinion, hereafter the term "plaintiffs" will refer to the Oppenheims, because they are the only plaintiffs at issue in this appeal who purchased art covered by invoices that did not contain the arbitration clause.

[9] *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001).

[10] *In re Nestorovski Estate*, 283 Mich App 177, 184; 769 NW2d 720 (2009).

5

## III. ANALYSIS

"Arbitration is a matter of contract."[11]  Accordingly, we must apply the same legal principles that govern contract interpretation to the interpretation of an arbitration agreement.  Our primary task in construing a contract is to give effect to the parties' intentions at the time they entered into the contract, which requires an examination of the language of the contract according to its plain and ordinary meaning.[12]  We must interpret and enforce clear and unambiguous language as it is written.[13]

With these principles in mind, the pertinent issue for our review is whether the Court of Appeals erred by concluding that the arbitration clause included in the parties' later invoices encompassed disputes arising from earlier transactions when the invoices for the earlier transactions did not contain the clause.  We conclude that the Court of Appeals erred because "[a] party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration,"[14] and there is no evidence from which this Court can conclude that the parties' intended to subject the earlier transactions to arbitration.

Michigan law requires that separate contracts be treated separately.[15]  Plaintiffs' purchases were of unique pieces of art purchased on different cruise ships in various

---

[11] *Kaleva-Norman-Dickson Sch Dist No 6 v Kaleva-Norman-Dickson Sch Teachers' Ass'n*, 393 Mich 583, 587; 227 NW2d 500 (1975).

[12] *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014).

[13] *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999).

[14] *Kaleva*, 393 Mich at 587.

[15] See *Mich Nat'l Bank v Martin*, 19 Mich App 458, 462; 172 NW2d 920 (1969).  The Restatement of Contracts supports the notion that separate contracts are to be treated

international waters on different dates. Each unique transaction, accompanied by a separate invoice, constituted a separate and distinct contract, capable of independent enforcement. The invoices pertaining to plaintiffs' 2003 and 2004 purchases did not require any dispute arising from those purchases to be arbitrated; those invoices contained absolutely no reference to arbitration. There is, therefore, no basis on which to conclude that at the time of those purchases the parties intended to arbitrate any disputes that might arise.

Accordingly, disputes arising from plaintiffs' 2003 and 2004 purchases are subject to arbitration only if the arbitration clause contained in the 2008 and 2009 invoices can be retroactively applied to the earlier transactions. Michigan law, however, has long

---

separately. For example, comment *d* regarding Restatement Contracts, 2d, § 231, pp 197-198, provides in relevant part:

> The rules that protect parties whose performances are to be exchanged under an exchange of promises apply only when the promises are exchanged as part of a single contract. . . . [I]f one or more promises by each party are not part of the consideration for one or more promises by the other party, there are instead separate exchanges. . . . In deciding whether there is a single contract rather than separate contracts, the court must look to the actual bargain of the parties . . . to decide whether each promise on one side was sought and given as at least part of the exchange for each promise on the other side.

Similarly, comment *b* regarding Restatement, § 240, p 230, provides in relevant part:

> If there are two separate contracts, one party's performance under the first and the other party's performance under the second are not to be exchanged under a single exchange of promises, and even a total failure of performance by one party as to the first has no necessary effect on the other party's duty to perform the second.

recognized that contracts generally cannot be construed to operate retroactively,[16] and there is no basis on which to find that the parties in the instant case intended for the later arbitration clauses to apply retroactively in contravention of this general principle. The Court of Appeals erroneously concluded that the phrase "[a]ny disputes or claims of any kind" contained in the arbitration clause was sufficiently broad to encompass disputes arising under prior contracts that did not contain the clause. However, it is significant that the plain language of the invoices that contained the arbitration clause does not refer to previous transactions between the parties let alone suggest that the clause was to apply to such transactions. Similarly, the 2003 and 2004 invoices do not indicate that the terms of a subsequent contract between the parties might apply to the 2003 and 2004 transactions. Having examined all the facts, we are unable to conclude that the parties intended the interpretation adopted by the Court of Appeals.

The Court of Appeals relied heavily on the proposition that Michigan courts " 'resolve all conflicts in favor of arbitration,' "[17] and particularly on *Kaleva-Norman-Dickson Sch Dist No 6 v Kaleva-Norman-Dickson Sch Teachers' Ass'n*,[18] in which this Court stated:

---

[16] See *Hyatt v Grover & Baker Sewing-Machine Co*, 41 Mich 225, 227; 1 NW 1037 (1879) (holding that a surety contract would only apply prospectively given that the contract did not specify retroactive application); *Brockway v Petted*, 79 Mich 620, 626; 45 NW 61 (1890) (stating that a surety contract only applies to future events unless otherwise provided in the contract).

[17] *Beck*, unpub op at 7 (citation omitted).

[18] *Kaleva*, 393 Mich at 592, quoting *United Steelworkers of America v Warrior & Gulf Navigation Co*, 363 US 574, 582-583; 80 S Ct 1347; 4 L Ed 2d 1409 (1960) (alteration in original).

8

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. . . ." Absent an "*express provision* excluding [a] particular grievance from arbitration" or the "*most forceful evidence* of a purpose to exclude the claim", . . . the matter should go to arbitration[.]

A majority of the Court of Appeals panel determined that this language was controlling and resolved the issue in favor of defendants.[19]

While this language recognized "[t]he policy favoring arbitration of disputes arising under collective bargaining agreements," it does not remotely suggest that an arbitration agreement between parties outside the collective-bargaining context applies to any dispute arising out of any aspect of their relationship.[20] That is, a general policy favoring arbitration cannot trump the actual intent and agreement of the parties. This is not to say that an arbitration clause in a later contract can never be applied to a previous contract, but the facts of this case do not provide for such retroactive application. Consequently, there is no basis on which to conclude that disputes arising from plaintiffs' 2003 and 2004 purchases are subject to arbitration.

Moreover, the analysis in *Kaleva* is inapplicable to the factual circumstances of the instant case. In *Kaleva*, the relevant arbitration provision was contained in a collective-bargaining agreement, the terms of which governed the plaintiff's employment with the defendant. There was no dispute that the collective-bargaining agreement

---

[19] Judge HOEKSTRA disagreed with the majority's conclusion that the arbitration clause included in later invoices applied to disputes over the earlier transactions for which the invoices did not contain the arbitration clause.

[20] *Kaleva*, 393 Mich at 591.

9

containing the clause was applicable to the parties' employment relationship, and the relevant issue was simply whether the plaintiff's particular grievance fell within the terms of the arbitration clause. In contrast, the arbitration clause in the instant case was extended from distinct contracts concerning separate transactions to disputes over earlier transactions with their own distinct contracts. Therefore, the facts and issues presented in *Kaleva* were very different from those presented here. Consequently, the analysis in *Kaleva* is not helpful in resolving the instant matter and does not compel the result reached by the Court of Appeals.

We are also not persuaded by the federal authority cited by the Court of Appeals. In those cases, the federal courts held that the terms of later-executed contracts applied to previous dealings between the same parties. See *Levin v Alms & Assoc, Inc*, 634 F3d 260 (CA 4, 2011), and *Watson Wyatt & Co v SBC Holdings, Inc*, 513 F3d 646 (CA 6, 2008). Those cases are distinguishable from the present case because the litigants' transactions in the federal cases were ongoing and regular, evincing a steady and continuous business relationship. In the instant case, the parties' transactions were sporadic and irregular, evincing nothing more than the execution of separate and distinct transactions that were distant in time. The inclusion of the arbitration clause in the later contracts at issue here did not put plaintiffs on notice that it was to apply to all previous contracts between the parties.

In sum, the undisputed facts do not reasonably support the conclusion that the parties intended for the arbitration clause contained in the invoices for some transactions to apply to separate and distinct prior transactions. There simply is no legal basis on which to retroactively insert an arbitration clause into the parties' 2003 and 2004

10

contracts. Consequently, only plaintiffs' claims arising from purchases for which the invoices included the arbitration clause are subject to arbitration.

## IV. CONCLUSION

We disagree with the Court of Appeals' conclusion that, by signing an invoice containing an arbitration clause, plaintiffs agreed to arbitrate not only disputes regarding transactions described in that invoice, but also disputes regarding past transactions, regardless of whether the invoices associated with the past transactions included an arbitration clause. The plain language of plaintiffs' 2003 and 2004 invoices makes no mention of arbitration, and there is no basis on which to conclude that the parties intended for the arbitration clause contained in their 2008 and 2009 invoices to retroactively apply to the earlier transactions.

Because we conclude that the only claims subject to arbitration are those arising from invoice agreements containing an arbitration clause, we reverse that part of the Court of Appeals judgment that applied the arbitration clause to the parties' prior transactions completed without reference to arbitration. We remand this case to the Court of Appeals for consideration of the issues raised in plaintiffs' appeal that the Court did not address to the extent those issues relate to claims that are not subject to arbitration. In all other respects, leave to appeal is denied, because we are not persuaded that the remaining question presented should be reviewed by this Court.

Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

11